Bichabdson, Ch. J.,
delivered the opinion of the court:
The claimant alleges in his petition that on or about the 31st of July, 1861, General Fremont, for and on behalf of the United States Government, employed him as a “ military expert ” to perform special and important duties; and in his requests for findings of fact he asks the court to find that the service was not that of a spy, neither was it a secret service, but was the service of a “ military expert.”
In the findings of fact the court has specified the services actually performed, without designating them by name or character, whether those of a secret agent, a spy, or a “ military expert.” It was held by the Supreme Court in Totten’s Case (92 U. S. R., 105) that the President “ might employ secret agents to enter the rebel lines and obtain information respecting the strength, resources, and movements of the enemy; and contracts to compensate such agents are so far binding upon the Government as to render it lawful for the President to direct payment of the amount stipulated out of the contingent fund under his control.” They also held that such an agent could not recover in an action at law, because “ the secrecy which such contracts impose precludes any action for their enforcement. The publicity produced by an action would itself be a breach of a contract of that kind, and thus defeat a recovery.”
*379 The services of a spy in time of war are well understood in military law. They are held honorable on one side and criminal on the other, where they are invariably punishable with death. (Rev. Stat., § 1343; 1 Winthrop’s Military Law, §§1106, 1109.) Whether or not contracts for such service could be enforced at law it is not necessary to discuss, since the claimant disclaims that character altogether, and it is not material in the view we take of the case.
A “ military expert,” as a distinct official or unofficial personage, is unknown to military organizations, and is nowhere provided for in the statutes, is not mentioned in the Army Eegulations, and is not recognized in any dictionary or other publication, military or otherwise, that has been called to our attention or that we have been able to find. We have always supposed that such generals as Grant, Sherman, Sheridan, and the other distinguished officers who led the Union Army to victory in the late war of the rebellion were “military experts,” and were the only such “ experts ” employed by the United States in that conflict. The compensation sought to be recovered by the claimant in this action is greater than the amount paid to either one of the generals named for his services during the entire period of war.
It is evident from the finding that the claimant was employed in “ secret service,” and that his case comes within that of Tot-ten, above referred to. Finding v shows plainly enough that in October, 1861, both lie and General Fremont so regarded the service. In that month General Fremont gave him two orders on a United States paymaster of $300 each “for secret service.” The claimant was paid thereon, and gave receipts for “account of secret service rendered to the United States.”
In the letters of General Grant, dated in November, 1861, and of Commodore Foote and General Fremont, dated in January, 1862, set out in finding vix, with which he presented his claim to President Lincoln when he was seeking pay for his services through the executive branch of the Government, and upon which he relied, it is nowhere intimated that he was employed as a “ military expert.”
General Frémont’s letter thus refers to claimant’s services:
*380 “Astor House, New York, January 2, 1862.
“ This is to certify that Mr. Charles de Arnaud was employed by me from about the first of August in traveling throughout the rebel parts of Tennessee and Kentucky, with the object of ascertaining the strength, condition, and probable movements of the rebel forces.
“ He made under my directions many such journeys, reporting fully and in detail upon the force of the various encampments ; and the condition and strength of garrisons and various works in Tennessee and along the Mississippi River.
“ He obtained this information at much personal risk and with singular intelligence, and performed the duties entrusted to him entirely to my satisfaction. He continued on this duty until the termination of my command in the Western Department.
“ His services were valuable to the Government, and I consider him entitled to the largest consideration that the Government allows in such cases or to such agents.
“J. C. Frémont,
“ May. GenH, U. 8. A.”
These letters were all written just after the claimant’s employment, and seem to correctly describe his services.
There is no doubt that the claimant did perform valuable services, especially valuable to General Grant, who gives him credit for having communicated information on which alone he took possession of Paducah, Ky. Thus he contributed to one of the most important strategic movements during the war, and he was otherwise of use to the Army. While he deserves the good will of the country, and undoubtedly reasonable compensation for his services, if he has not already received it, we are of opinion that his case can not be distinguished from that of Totten, and that his remedy is not in this court, but in Congress.
Upon these views the case is disposed of without passing upon any of several other questions which might be raised upon the findings.
1. Whether or not the Government of Russia, of which the claimant is a subject, “accords to citizens of the United Stages the right to prosecute claims against such Government in its courts ” within the meaning of Revised Statutes, section 1068, under which aliens have the privilege of prosecuting claims against the United States iu this court, the findings of fact show that “ aliens residing iu Russia are subject to Russian *381 laws, as well personally as in regard to property, and enjoy tlie common defense of safeguard and protection thereof,” and that “ claims of private persons against the govern'ment institutions are governed by general rules, and are brought according to the location of the property, or according to the place where the loss was sustained by the private person, or according to the place where the government institution or where the government officer is situated or resides who represents the Government in court.”
2. Treating the jurisdiction of this court as dependent upon the transmission by the Secretary of the Treasury; whether the claim was not within the exclusive jurisdiction of the War Department to determine, on the authority of Totten’s case, before the Treasury Department could act upon it at all, or whether the latter Department could take up a claim which had been settled and paid through the proper Department more than twenty-five years previously, open the settlement on petition of the claimant first made there after that lapse of time, and confer jurisdiction on this court by transmission by the Secretary. (Alexandria, Loudoun and Hampshire R. R. Co., 26 C. Cls. R., 327.)
3. Treating the case as commenced either by claimant’s petition or by transmission from the Treasury Department; whether insanity prevents the running of the statute of limitation as set out in the Act of 1887, March 3, ch. 359, § 1 (24 Stat. L., 505), which, after reenacting the jurisdiction of the court with some additions and one exception, adds this proviso, u that no suit against the Government of the United States shall be allowed under this act unless the same shall have been brought within six years after the right accrued for which the claim is made,” with no exceptions mentioned.
The petition is dismissed.